## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## ALBANY DIVISION

|  |  |  |
|---|---|---|
| ANTOINE MOODY, | : |  |
| Plaintiff | : | |
| | : | |
| v. | : | 1:03-CV-75 (WLS) |
| | : | |
| CITY OF ALBANY, et. al., | : | |
| | : | |
| Defendants | : | |
| | : | |

## <u>ORDER</u>[1]

Before the Court is Defendants Joe Messer and Defendant Scott Mullen's ("Officer Defendants") Motion for Summary Judgment (Doc. 102). For the following reasons, Defendants Messer and Mullen's Motion for Summary Judgment (Doc. 102) is **GRANTED**.

---

[1]     At the June 12, 2006 pre-trial hearing, the Court orally articulated its findings as to the then-pending motions for summary judgment (Docs. 102, 103), and stated its intention to issue a written order further detailing its reasoning, when the parties represented that the case had been settled. (Doc. 132). Based upon this representation, the Court: 1) found that such a written order would not be beneficial to the parties (Plaintiff & Defendants Bruce and Folmar) and would serve no useful purpose to the Court as they may have had the case not been settled; and 2) ordered the parties to file their dismissal document(s) by Friday, July 14, 2006, or in the event that the parties are unable to file said document(s) by that date, to file instead a written status report concerning an agreement to settle or for the entry of final settlement. *Id.*

In light of Plaintiff's filing of a Notice of Appeal as to those portions of the Court's June 12, 2006 bench ruling on Officer Defendants' Motion for Summary Judgment (Doc. 134), the Court finds it necessary and prudent to state its findings on the same as part of the Record. As the portions of the Court's June 12, 2006 bench ruling pertaining to Deputy Defendants' Motion for Summary Judgment are presumptively settled and are not presently on appeal, the Court finds that it serves no purpose to discuss as between those settling parties. .

Accordingly, only those portions of the Court's substantive findings pertaining to Officer Defendants are articulated in this Order. *See infra* Parts IV-VI. In light of the complicated procedural history of this case, the procedural history, including the Court's procedural findings, is articulated as its pertains to all parties. *See infra* Parts I, III.

This order is entered in completion of the record prior to entry of judgment. Fed. R. Civ. P. 54(b); *see, e.g.*, Allaire v. U.S. Trust Co., 478 F.Supp. 826 (D. V.I. 1979) (where there was no trial and no final judgment as to all defendants, a motion by plaintiff to set aside summary judgment as to one defendant was treated if made pursuant to Rule 54(b), under which order of summary judgment is subject to revision at any time before entry of judgment).

## DISCUSSION

**I.     Procedural Background**

Plaintiff initiated the above-captioned action on April 28, 2003 pursuant to 42 U.S.C. §
1983 and Georgia state law for alleged deprivations of rights guaranteed by the First, Fourth,
Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and Article I of the
Georgia Constitution.  (Doc. 1).   On March 1, 2005, the Court entered an order granting in part
and denying in part Defendants' then-pending motions for summary judgment.  (Doc. 55).
Pursuant thereto, Plaintiff's federal and state law claims against Defendants City of Albany,
Dougherty County, Chief Bobby Johnson, and Sheriff Jamil Saba were resolved in favor of said
Defendants.  *Id.*

Likewise, Plaintiff's federal claims against Defendants Officers Joe Messer and Scott
Mullen ("Officer Defendants") in their official and individual capacities were resolved in favor
of the Officer Defendants.  While summary judgment on Plaintiff's state law claims against
Officer Defendants in their official capacity was granted in favor of Officer Defendants,
Plaintiff's state law claims against Defendants in their individual capacity was denied.
Additionally, summary judgment was granted Deputy Defendants Tommy L. Bruce and Jerry
Folmar ("Deputy Defendants") as to all of Plaintiff's federal claims asserted against them in their
official capacity, and as to Plaintiff's federal speech-based retaliation claim asserted against them
in their individual capacity.  *Id.*   Summary judgment was denied Deputy Defendants in their
individual capacity, however, as to Plaintiff's federal claims for illegal arrest, false arrest, and use
of excessive force.  *Id.*

Accordingly, Plaintiff's claims against Deputy Defendants for illegal arrest, false arrest,
and use of excessive force; and Plaintiff's claims against Officer and Deputy Defendants for
violation of state law remained for trial.  All claims against  Defendants City of Albany,
Dougherty County, Chief Bobby Johnson, and Sheriff Jamil Saba, were resolved in favor of said
Defendants.  *Id.*

On January 20, 2006, upon Plaintiff's Motion for Reconsideration, and the Court's
consideration of the same, the Court found that through a combination of factors, including errors

on the Court's part and less than clear presentation of the issues by the parties, that the portions

of the March 1, 2005 Order addressing Plaintiff's claims against Officer and Deputy Defendants

may contain errors of fact and law.  Accordingly, those portions pertaining to claims against

Officer and Deputy Defendants were vacated.   All other aspects of the March 1, 2005 Order

remain in effect.  (Doc. 95).

Plaintiff was further ordered to file a short plain statement of the claims that Plaintiff has

asserted against these Defendants and which Plaintiff contends remain in view of the above

vacation based on the record existing before the March 1, 2005 Order was issued.  Thereafter, the

Officer and Deputy Defendants were permitted to renew their motions for summary judgment.

The Court specifically noted that "[a]ny claim not specifically addressed in said motions [would]

not be considered by the Court in addressing" the same. *Id*.

Deputy Defendants then moved on January 23, 2006 for clarification of the Court's

January 20, 2006 Order.  (Doc. 97).  Specifically, Deputy Defendants inquired as to whether the

Court's January 20, 2006 Order allows Plaintiff to articulate new theories of recovery that were

not alleged in the complaint, or, alternately, whether the order allows Plaintiff to amend his

complaint. *Id*.  To which the Court responded in a January 26, 2006 Order, "[t]he simple answer

is 'no'".  (Doc. 98).   The Court further clarified as follows:

> The [January 20, 2006] order was intended to direct Plaintiff to clearly articulate each and
> every theory of recovery that he maintains was pled in the complaint. There appears to be
> some confusion between the parties as to whether or not Plaintiff pled certain theories of
> recovery. Therefore, in order to adequately alert the parties and the Court, Plaintiff shall
> clearly assert all theories of recovery no later than close of business Friday, January 27,
> 2006, each and every theory of recovery that he maintains is pled in the complaint. As
> stated previously, Plaintiff will be bound by said assertions in the future, notwithstanding
> any other oral or written assertions. Plaintiff shall of course cite to relevant paragraphs of
> his complaint which he contends state the basis for an asserted claim.
> *Id*.

On January 27, 2006, Plaintiff submitted a Statement of Claims, in which he contends to have

pled the following claims in his Complaint, each of which will be addressed in turn in the instant

Order: 1) illegal stop under Section 1983 against Officer Defendants, 2) illegal arrest under

Section 1983 against Officer and Deputy Defendants, 3) excessive use of force under Section

1983 against Deputy Defendants, 4) false imprisonment under Georgia law against Officer and

Deputy Defendants, 5) First Amendment retaliation under Section 1983 against Officer and Deputy Defendants, 6) malicious prosecution under Georgia law against Officer and Deputy Defendants, 7) malicious prosecution under Section 1983 against Deputy Defendants, 8) Fourteenth Amendment Equal Protection violation against Officer and Deputy Defendants, and 9) conspiracy pursuant to 42 U.S.C. § 1985 against Officer Defendants.[2]

Officer Defendants renewed their Motion for Summary Judgment on February 9, 2006. (Doc. 102).  Deputy Defendants renewed their Motion on February 10, 2006.  (Doc. 103). Plaintiff submitted a response brief to both Motions on March 3, 2006, which he purported to amend without leave of Court on March 13, 2006.  (Docs. 105, 108).  Deputy Defendants filed a reply brief on March 14, 2006.[3]  (Doc. 109).  Thereafter, Plaintiff filed motions to amend the response brief and for a hearing on the instant summary judgment motions.[4]

On May 9, 2006, the Court held a hearing on the pending Motions for Summary Judmgent, at which time the Court determined that further briefing was necessary on the issue of whether a passenger, who exercises no rights of ownership or control over a vehicle, has proper standing to bring a Fourth Amendment claim challenging the initial stop of said vehicle by law enforcement.  (Doc. 121).   The parties timely filed the requested briefs.  (Docs. 123, 124, 125).

---

[2]     The Court notes that Plaintiff submitted what he entitles "Corrected  Statement of Claims" on January 30, 2006. (Doc. 101).   In two separate Orders, the Court ordered Plaintiff to submit his Statement of Claims by the close of business on January 27, 2006.  (Docs. 97, 98).  The Court further indicated that Plaintiff was to be bound by any assertions contained therein.  *Id.*  Pursuant thereto, Plaintiff was not permitted to amend the same without leave of Court.  Plaintiff neither filed a motion nor otherwise sought leave to submit said "Corrected Statement."  Accordingly, Plaintiff's "Corrected Statement" shall be disregarded and not considered in connection with the above-captioned action.

[3]     The Court notes that Deputy Defendants and Defendants Dougherty County and Sheriff Jamal Saba filed an unauthorized supplemental brief to their Motion for Summary Judgment on May 12, 2006.  (Doc. 120).  The Court reminds the parties that its January 20, 2006 Order permitted renewal of the erroneously ruled-upon motions for summary judgment, and decidedly not the filing of previously uncontemplated motions or supplemental briefs.  Accordingly, said brief shall be disregarded and not considered in connection with the above-captioned action.

[4]     Plaintiff's Motion to Amend seeks to substitute one exhibit for another.  (*See* Doc. 112).  Notably, Plaintiff neither filed a motion nor otherwise sought leave to submit an amended response brief, as he purported to do on March 13, 2006.  (*See* Doc. 108).  Accordingly, said exhibits shall be disregarded and not considered in connection with the above-captioned action.

## II.    Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure establish that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). An issue is "genuine" if the quantum and quality of proof necessary to support liability under the claim is raised. Allen v. Tyson Foods, 121 F.3d 642, 646 (11th Cir. 1997). A fact is "material" if it hinges on the substantive law at issue and it might affect the outcome of the nonmoving party's claim. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); *see also* Allen, 121 F.3d at 646. A judgment is appropriate "as a matter of law" when the nonmoving party has failed to meet its burden of persuading the Court on an essential element of the claim. Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 804 (1999); Celotex Corp., 477 U.S. at 323.

The movant bears the initial burden of showing that there is no genuine issue of material fact. Celotex Corp, 477 U.S. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact or by showing, or by pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-24. Once the movant has met its burden, the nonmoving party is required "to go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324. To avoid summary judgment, the nonmoving party must do more than summarily deny the allegations or "show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

On a motion for summary judgment, the Court must view all the evidence and all factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict. Celotex Corp., 477 U.S. at 322-23; Allen, 121 F.3d at 646. However, the Court must grant summary judgment if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R.

Civ. P. 56(c).

### III.    Local Rule 56

Officer and Deputy Defendants separately move for summary judgment. (Docs. 102, 103).   Local Rule 56 *requires* the following from a respondent to a motion for summary judgment:

> The respondent to a motion for summary judgment shall attach to the response a separate and concise statement of material facts, numbered separately, to which the respondent contends there exists a genuine issue to be tried. Response shall be made to each of the movant's numbered material facts. All material facts contained in the moving party's statement which are not specifically controverted by the respondent in respondent's statement shall be deemed to have been admitted, unless otherwise inappropriate.
>
> M.D. Ga. R. 56.

Additionally, Local Rule 56 specifically states that "[s]tatements in the form of issues or legal conclusions (rather than material facts) will not be considered by the court."  Local Rule 56. Indeed, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. [citation omitted.] Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." *See*  Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995).

Here, Plaintiff purported to respond to separate motions for summary judgment and the statements of material facts filed in connection therewith with a single response brief and a single set of statements of material facts, filed separately in response to Defendants' respective motions. (*See* Docs. 106, 107).   Upon further review of Plaintiff's statements, the Court notes that the same does not consist of proper responses to either the Officer Defendants' or the Deputy Defendants' statements of material fact, but rather a set of arguments and conclusory assertions about the quality of said facts, in direct contravention of the Local Rule.  (*See* Docs. 106, *compare* Docs. 103, 106).   In fact, of the twenty-one facts proffered by Plaintiff, three purport to respond to particular facts asserted by Officer Defendants, and none purport to respond to

particular facts asserted by Deputy Defendants.[5]  *Id.*   Accordingly, the Court finds that Plaintiff summarily failed to respond properly to Defendants' factual assertions with the specificity required by the Local Rules.

Most jurisdictions state uncategorically that local rules operate with the force of substantive law.  *See* Link v. Wabash Railroad Co., 291 F.2d 542 (7th Cir. 1961).   In addition, some jurisdictions allow the granting of default judgments for failure to properly respond to a motion for summary judgment.  In such a jurisdiction, nineteen of Officer Defendants' material facts and all fifteen of Deputy Defendants' material facts could have been deemed admitted as they were in no way properly controverted by Plaintiff.  In fact, this is what this Court's Local Rule clearly contemplates.   If this were to have occurred, Defendants on that basis alone would have won summary judgment on nearly all of the claims presented by Plaintiff.   However, rather than simply being a rule with a punitive effect if violated, Local Rule 56 is intended to instruct the parties on how best to assist the Court in identifying genuine material facts which are in dispute.

With regard to granting motions for summary judgment of a respondent's failure to properly respond, the Eleventh Circuit is more circumspect.  The rule in this circuit is that local rules are binding on the parties, but the enforcement of the rule must be tempered with consideration of the circumstances.  Cohen v. Carnival Cruise Lines, Inc., 782 F.2d 923 (11th Cir. 1986).  A local rule cannot eviscerate a statutory right or conflict with the federal rules. Villano v. City of Boynton Beach, 254 F.3d 1302, 1310-11 (11th Cir. 2001).  While not binding on this Court, a Florida district court rejected a magistrate's recommendation to enter a default

---

[5]       Furthermore, Plaintiff attached to his purported statements of material facts a number of previously unproduced documents, having sought neither leave of Court nor provided alternate justification for his failure to produce the same during discovery.  (Doc. 106, Exh. 2).   Such a failure to timely produce cannot be properly remedied by attachment to supporting documents of a response brief to a summary judgment motion, when said motion was filed based on a record which has undergone proper discovery.  Additionally, or more importantly, the Court made it clear that the parties were bound by the existing record.  The parties were allowed a "re-bite" of the apple, not a "second bite." Accordingly, the aforementioned documents are stricken from the record and will not be considered in connection with the instant motion. *See infra* n. 15.

judgment on a motion for summary judgment simply because the respondent failed to respond to the motion in violation of the local rule.  *See* <u>Kinder v. Carson</u>, 127 F.R.D. 543 (S.D. Fla. 1989).

Likewise, in the Eleventh Circuit, a district court cannot grant a motion for summary judgment based on default or as a sanction for failure to respond.  *See* <u>Trustees of Central Pension Fund of International Union of Operating Engineers and Participating Employers v. Wolf Crane Service, Inc.</u>, 374 F.3d 1035, 1039 (11th Cir. 2004).  Thus, even if the Court were inclined by local rule to accept Officer Defendants' or Deputy Defendants' statement of facts as true without examining the record or to grant Defendants' motions because Plaintiff has failed to properly respond, it cannot do so.  This Court must make an independent review of the record before deciding Defendants' motions.  However, it is doubtful that the Eleventh Circuit's less stringent rule is intended to excuse counsel of his responsibility to respond appropriately.  To conclude otherwise would make the adversarial aspects of the process, including where both sides are represented by counsel, essentially meaningless.

After extensive review of the record, the Court finds it inappropriate to punish Plaintiff by summarily disposing of his claims merely for his counsel's failure to properly comply with the Local Rules. *See* Analysis, *infra*.  However, the Court hereby notifies Plaintiff's counsel that it is not the Court's responsibility to expend valuable and limited resources and time to scour the record and compose for him a proper opposing statement of material facts.  The Court further reminds Plaintiff's counsel of the necessity of submitting a Statement of Material Facts which complies with Local Rule 56.  The Court also reminds Plaintiff's counsel that his refusal to adhere to the Local Rule of this Court with respect to responses to properly filed motions for summary judgment not only causes the Court undue burden, but such noncompliance also unnecessarily jeopardizes the survivability of the party's claims.

While Eleventh Circuit law prevents this Court's Local Rule from resulting in judgment for Defendants without an independent review of the record in the absence of a proper response, the Court is not powerless to sanction counsel for failure to comply with the Local Rules.  Counsel is so warned for purposes of similar future pleadings.

8

The Court acknowledges that while an action may understandably begin with broad allegations and assertions of fact, a well pled motion for summary judgment and referenced supporting materials, especially renewed motions for summary judgment such as those presently before the Court, necessarily focus the required responses.

## IV.    Factual Summary

Based on the evidence submitted by the parties, the following is the version of the facts construed in a light most favorable to non-movant Plaintiff, as is required when analyzing summary judgment motions, especially those where movant Defendant invokes qualified immunity as a defense. *See, e.g.*, Grayden v. Rhodes, 345 F.3d 1225, 1231 (11th Cir. 2003) (*citing* Saucier v. Katz, 533 U.S. 194 (2001)); *see also* Priester v. City of Riviera Beach, Fla., 208 F.3d 919, 925-26 n.3 (11th Cir. 2000).

On or about April 26, 2001, Officer Defendants Messer and Mullen were officers with the City of Albany Police Department.  (Docs. 102, 103, 105).[6]  Officer Defendants were Peace Officer's Standards and Testing ("P.O.S.T") certified and properly trained in the appropriate procedures concerning the lawful execution of traffic stops and in conducting investigations pursuant to such traffic stops."  (Doc. 102).  Also, Deputy Defendants "ha[d] received current training in arrests, probable cause, administering field sobriety tests, and the use of force, which training includes [P.O.S.T.] certification." (Doc. 103).

During the early morning hours of the date in question, Defendant Mullen saw a vehicle and observed the driver's failure to wear his seat belt.  (Docs. 102, 103).  Defendant Mullen was traveling in the opposite direction of the suspect vehicle and was unable to turn his vehicle

---

[6]    In his response brief to the instant Motions for Summary Judgment, Plaintiff asserts the date in question to be April 21, 2001 not April 26, 2001. (Doc. 105).  Plaintiff made similar assertions in his response briefs to Defendants' prior Motions for Summary Judgment.  (*See* Docs. 42, 49).  In his Complaint, however, Plaintiff alleges the relevant date to be April 26, 2001; an allegation supported by statements of material facts filed by Plaintiff in connection with the aforementioned response briefs (*See* Docs. 41, 106) and separately by relevant filings made by Defendants.  (*See, e.g.,* Docs. 2, 3, 4, 21, 22 29, 30, 102, 103).  The Court, therefore, finds there to be no genuine dispute as to the date in question.

around quickly and safely enough to stop the vehicle himself. *Id*.   Thereafter, Defendant Mullen radioed Defendant Messer, who Defendant Mullen knew to be in the area, and made a request for assistance. *Id*.

After corroborating the information relayed by Defendant Mullen, as well as independently confirming that the driver, later determined to be Rudolph Morrison, was not wearing a seat belt and further observing that one of the vehicle's lights was defective or malfunctioning, Defendant Messer initiated a traffic stop. *Id*.   Plaintiff was a front-seat passenger and Casmarah Mimbs was the back-seat passenger in the subject vehicle at the time of the events in question.  (Docs. 102, 103, 105).

Less than five minutes after the vehicle was stopped, Defendant Mullen arrived to assist Defendant Messer.  (Docs. 102, 103).   Defendant Messer approached on the driver's side of the vehicle as Defendant Mullen approached on the passenger's side.  (Doc. 102).   Defendant Messer states he detected an odor of alcohol from Mr. Morrison, and questioned the driver as to whether he had been drinking.  *Id*.   According to the Officer Defendants, Mr. Morrison stated that he had consumed one or two drinks earlier in the evening, upon which statement Defendant Messer then determined that it would be necessary to administer an Alcosensor test which would require the assistance of the Dougherty County Sheriff's Office, as the Officer Defendants possessed neither the device nor training necessary to administer such a test.  *Id*.   As Officer Defendants began questioning Mr. Morrison, Mr. Mimbs asked Defendants why they were being stopped.  *Id*.   Officer Defendants did not respond to Mr. Mimbs' inquiry.  Mr. Mimbs responded by continuing to question the stop to no avail.  *Id*.   Plaintiff did not attempt to or actually engage in any conversation with Officer Defendants during Mr. Mimbs' interaction with Officer Defendants.  *See id*.

Meanwhile, Deputy Defendants Folmar and Bruce answered Officer Defendants' request for Dougherty County Sheriff's Department assistance.  (Docs. 102, 103, 105).   Upon their arrival, Defendant Messer explained to Defendant Folmar that he had detected an odor of alcohol from Mr. Morrison; and that the driver had been drinking earlier in the evening.  (Doc. 102).

Defendant Messer then asked the Deputy Defendants if they had an Alcosensor to use in administering a field sobriety test.  (Doc. 103) .    The Deputy Defendants responded affirmatively, exited their patrol cars, then attempted to administer the test to Mr. Morrison. (Doc. 102).

At this point, Mr. Mimbs began yelling and shouting profanity at Defendant Folmar while he was attempting to explain the procedure for taking the test to Mr. Morrison.   (Docs. 102, 103).   Deputy Defendants separately instructed Mr. Mimbs to lower his voice, alleging the same to interfere with Defendant Bruce's ability to effectively administer the Alcosensor test on Mr. Morrison.  *Id*.   Notwithstanding Deputy Defendants' instructions, Mr. Mimbs continued shouting throughout the test administration.  *Id*.    At some point, Deputy Defendants proceeded to the passenger's side of the vehicle in an effort to calm Mr. Mimbs.[7]   During that time, Defendant Mullen allegedly went to the driver's side of the vehicle to assist Defendant Messer in his investigation of Mr. Morrison.  (Doc. 102).   At this point, Plaintiff had not engaged in any interaction with Deputy Defendants.  *See id*.

The shouting and disorderly behavior, according to Deputy Defendants, continued despite the verbal efforts by the Deputy Defendants to calm Mr. Mimbs.  (Docs. 102, 103).  As a result, Mr. Mimbs was removed from the vehicle by Deputy Defendants.   Mr. Mimbs resisted Deputy Defendants' attempt to remove him.  *Id*.   As a result, Deputy Defendants took Mr. Mimbs to the ground, handcuffed him, and began beating him for three (3) to five (5) minutes.  (Doc. 105). Thereafter, Defendant Folmar took Mr. Mimbs to a patrol vehicle.  (Docs. 102, 103, 105).

At this point, Plaintiff began shouting at Deputy Defendants to cease beating Mr. Mimbs, because Mr. Mimbs had recently undergone abdominal surgery.  (Doc. 105).   Deputy Defendants threatened that "his 'black ass' would be next" if he did not cease yelling.  *Id*.

---

[7]        Plaintiff does not address Defendants' assertions that Plaintiff and Mr. Mimbs were shouting, using profanity, or otherwise engaged in disorderly conduct.  (Doc. 105).  The only assertion which could possibly be construed as a dispute to Defendants' fact is Plaintiff's assertion that "[b]ecause Mr. Mimbs insisted on talking with Defendant Mullen, [Defendant] Bruce threatened to take [Mr. Mimbs'] 'black ass' to jail." *Id*.

Despite Defendants' warning, Plaintiff continued speaking, and as a result was removed from the car, "slammed on top of [a] patrol vehicle," and handcuffed. *Id.*

Thereafter, an unidentifiable law enforcement officer spoke with Deputy Bruce, after which Deputy Bruce approached Plaintiff, who was in Defendant Mullen's police vehicle.[8] *Id.* Plaintiff states that Deputy Bruce attempted to make an agreement securing his release if Plaintiff would not testify as to the events in question. *Id.* Plaintiff declined the offer. Thereafter, he was charged with disorderly conduct and booked at the Dougherty County Jail by Officer Mullen. *Id.* As a result, Plaintiff's employment with a company that services nuclear power plants was suspended until the charges were dismissed. *Id.*

Mr. Morrison was not charged with DUI. *Id.* He was, however, issued a citation for seatbelt violation as well as for driving without proof of insurance. (Docs. 102, 103). Subsequently, Mr. Morrison pled guilty to both of the above charges and did not file a claim with regard to the lawfulness of the stop. *Id.* Mr. Mimbs was told that he would be released if he agreed not to go to the emergency room. He was released; and never presented himself at an emergency room for treatment. None of the parties have asserted facts which suggest that the Officer Defendants interacted with or touched Plaintiff, at any time or in any way, during the time in which the vehicle was stopped. (*See* Docs. 102, 103, 105).

## V.      Legal Analysis

### A.      Qualified Immunity Standard

To determine whether a government official is entitled to qualified immunity, which protects said officials from suits for damages brought against them in their individual capacity for performing discretionary functions, the Court must find that: 1) the actions in question were taken pursuant to the performance of his duties; and 2) that the actions were within the scope of his authority. <u>Williams v. Consol. City of Jacksonville</u>, 341 F.3d 1261, 1267 (11th Cir. 2001);

---

[8]      It is unclear based on the record before the Court which law enforcement officer spoke with Defendant Bruce. It is clear, however, that Plaintiff alleges that Defendant Bruce made the offer at issue.

Stanley v. City of Dalton, 219 F.3d 1280, 1285 (11th Cir. 2000); Courson v. McMillan, 939 F.2d 1479, 1488 (11th Cir. 1991).

Once this is shown, the burden shifts to Plaintiff, who then must prove that the official's conduct violated "clearly established" constitutional law.  Sweatt v. Bailey, 876 F.Supp 1571, 1575 (*citing* Sims v. Metro. Dade Co., 972 F.3d 1230, 1236 (11th Cir. 1992)).  Recently, the Supreme Court in Saucier v. Katz, 533 U.S. 194 (2001), clarified the mode of analysis the court must use when addressing whether a plaintiff has adequately demonstrated that qualified immunity is not appropriate.  First, the court must first consider whether the facts as alleged, if true, show the individual defendant's conduct violated a constitutional right secured to the party asserting the injury .  *Id*. at 201, *citing*, Siegert v. Gilley, 500 U.S. 226, 232 (1991).  If no constitutional right would have been violated were the allegations established as true, there is no necessity for further inquiries concerning qualified immunity.  *Id*.  On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next sequential step is to ask whether the right was "clearly established" because qualified immunity inquiries have a further dimension.  This inquiry, the Court explained must be taken in light of the specific context of the case, not as a broad general proposition.  *Id*.

The right the official must have allegedly violated must be "clearly established" in a more particularized sense.  The Supreme Court reasoned in Saucier that it is sometimes difficult for a defendant to determine how the relevant legal doctrine, excessive force in the Saucier case, will apply to the factual situation the defendant confronts. *Id*. at 204.   The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Id*., *see*, Wilson v. Layne, 526 U.S. 603, 615 (1999).   In Hope v. Pelzer, 536 U.S. 730, 732 (2002), the Supreme Court provided further guidance, finding that the salient question is whether the state of the law, at the time of the alleged constitutional violation, gave the Defendant(s) "fair warning" that the conduct at issue was unconstitutional.

"Fair warning," which the Eleventh Circuit referred to as "fair and clear notice" may be

given in various ways.  Vinyard v. Wilson, 311 F.3d 1340, 1350 (11th Cir. 2002).   First, in what is termed an "obvious clarity" case, "the words of the pertinent federal statute or federal constitutional provision...will be specific enough to establish clearly the law applicable to particular conduct and circumstances and to overcome qualified immunity, even in the total absence of case law."  *Id*.   The obvious clarity exception is rare and narrow, "applying only when the conduct in question is so egregious that the government actor must be aware that he is acting illegally."  Thomas v. Roberts, 323 F.3d 950, 955 (11th Cir. 2003).

The court may also turn to case law to determine if "fair warning" was issued.  Vinyard, 311 F.3d at 1351.   "When looking at case law, some broad statements of principle in case law are not tied to particular facts and can clearly establish law applicable in the future to different sets of detailed facts."  *Id*.   However, "if a broad principle in case law is to establish clearly the law applicable to a specific set of facts facing a government official, it must do so 'with obvious clarity' to the point that every objectively reasonable government official facing the circumstances would know that the official's conduct did, in fact, violate federal law when the official acted."  *Id*.

However, when no case law exists with a holding sufficiently broad such that it is not tied to particular facts, the court must examine cases from the Supreme Court, the Eleventh Circuit, or the highest court in the state where the case originated to determine whether the allegedly offending official was afforded "fair warning."  *Id*.   "When fact-specific precedents are said to have established the law, a case that is fairly distinguishable from the circumstances facing that government official cannot clearly establish the law for the circumstances facing a government official; so, qualified immunity applies.  *Id*. at 1351-52.

## B.    Count I:  Section 1983 Claims for Unreasonable Seizure

Plaintiff asserts that Officer Defendants violated his Fourth Amendment right against unreasonable seizure by stopping the vehicle owned and operated by Mr. Morrison.  (Docs. 1, 99).   It is not contested by the parties that the Officer Defendants stopped the vehicle in which

Plaintiff was a passenger pursuant to the performance of their duties as police officers. Furthermore, it is established Georgia law that "[w]hen a police officer makes a traffic stop based on his having a clear view of the occupants of the front seat of a vehicle not wearing their seat belts, he is in the same situation as a police officer making a stop pursuant to <u>Terry v. Ohio</u>, 392 U.S. 1 (1968), except that the initial stop is based on probable cause, not just a reasonable and articulable suspicion that an individual is, or is about to be, engaged in criminal activity. <u>Davis v. State</u>, 232 Ga. App. 320 (1998).   Officer Defendants, therefore, sufficiently set forth facts supporting a finding of arguable probable cause, hence a prima facie case for qualified immunity.

Here, Plaintiff was a passenger in the vehicle alleged to have been stopped unlawfully.  It is uncontested that Plaintiff neither asserted property or possessory rights nor otherwise exercised rights of dominion or control over said vehicle.   While numerous courts of appeals and at least one district court in the Eleventh Circuit have found that such a passenger has rights under the Fourteenth Amendment and Section 1983 to sue for damages based upon an illegal stop, neither the U. S. Supreme Court, the Georgia Supreme Court, nor the Eleventh Circuit have specifically recognized such right. *See, e.g.*, <u>U.S. v. Kimball</u>, 25 F.3d 1 (1st Cir. 1994); <u>U.S. v. Rusher</u>, 966 F.2d 868 (4th Cir. 1992); <u>U.S. v. Roberson</u>, 6 F.3d 1088 (5th Cir. 1993); <u>U.S. v. Brown</u>, 102 F.3d 1390 (5th Cir. 1996); <u>U.S. v. Powell</u>, 929 F.2d 1190 (7th Cir. 1991); <u>U.S. v. Portwood</u>, 857 F.2d 1221 (8th Cir. 1988); <u>U.S. v. Erwin</u>, 875 F.2d 268 (10th Cir. 1989); <u>U.S. v. Lawson</u>, 782 F.Supp 1546 (S.D. Fla. 1992).   The Court therefore cannot and does not find as a matter of law that Plaintiff, as a passenger, does not have standing to challenge the stop in question.  In fact, no movant asserts that Plaintiff had no standing under binding authority.  (*See* Docs. 123, 124, 125).

Assuming *arguendo* that Plaintiff establishes sufficient standing to challenge the stop, the facts alleged, when viewed in the light most favorable to him, nevertheless fail to show that Officer Defendants violated Plaintiff's constitutional right against illegal seizure.  According to Defendants, Defendants Messer and Mullen initiated the traffic stop at issue after witnessing Mr. Morrison driving while not wearing a seatbelt.   Defendant Messer alleges to have further

observed that one of the vehicle's lights was defective or malfunctioning.  *See supra* Part IV.

The relevant evidence before the Court on this issue is that: 1) Officer Defendants initiated a traffic stop of Mr. Morrison's vehicle, 2) Mr. Morrison was issued a citation for failure to wear a seatbelt and for driving without proof of insurance, and 3) he pled guilty to the same as well.[9]  *See supra* Part IV.   By pleading guilty to the alleged traffic violations, Mr. Morrison confirmed that Officer Defendants had probable cause to conduct the traffic stop for said violation for purposes of the actions taken with respect to him, the driver of the vehicle.   Davis, 232 Ga. App. 320.   As the stop itself was not illegal, let alone unreasonable, Plaintiff cannot show that the same violated his Fourth Amendment right against illegal seizure based on the stop alone.  In other words, Plaintiff fails to establish how a valid stop of the driver could be a violation of his clearly established constitutional rights when no additional act affecting Plaintiff was committed by Officer Defendants.   Officer Defendants are therefore entitled to qualified immunity as to the stop of Mr. Morrison's vehicle.   Therefore, Officer Defendants' Motion for Summary Judgment (Doc. 102) is **GRANTED** on Plaintiff's Fourth Amendment claims contained within Count I of his Statement of Claims.   (*See also* Docs.1, 99).

### C.    Counts II, IV:  Section 1983 Claim for Illegal Arrest, Eighth Amendment Claims, and Georgia law Claim for False Imprisonment[10]

The facts alleged, when viewed in a light most favorable to Plaintiff, do not support a finding that Officer Defendants' conduct violated Plaintiff's constitutional right from illegal

---

[9]    While the Court notes that Plaintiff seems to suggest in his response brief to the Motions for Summary Judgment that Officer Defendants may have possessed some pretextual motive for stopping Mr. Morrison's vehicle, he neither affirmatively makes such a claim nor does he provide any evidence which could support the same. (*See* Doc. 105).   Plaintiff's subjective speculation as to the motive of the Officer Defendants are not responsive to Defendants' statements of facts.

[10]    Plaintiff appears to have asserted an Eighth Amendment claim. (Doc. 1). The Eighth Amendment "applies only to confinement that occurs subsequent to and as a consequence of a person's lawful conviction of a crime."   Hamm v. DeKalb County, 774 F.2d 1567, 1572 (11th Cir. 1985).   As Plaintiff was not convicted of a crime in relation to the events in question, summary judgment is appropriate as to his Eighth Amendment claims. Officer Defendants' Motions for Summary Judgment (Doc. 102) is **GRANTED** as to said claims, such, and to the extent, as they may have been asserted.

arrest.   Indeed, the facts as alleged to do not support a finding that Officer Defendants were in any way involved in the operative events preceding Plaintiff's arrest.   Plaintiff alleges that Deputy Defendants, and not Officer Defendants, were the active parties in: 1) interrogating and investigating Mr. Morrison, 2) administering an Alcosensor test to Mr. Morrison, 3) removing and handcuffing of Mr. Mimbs, and 4) removing and handcuffing Plaintiff. *See supra* Part IV. At best, Plaintiff suggests that one of the Officer Defendants may have transported him to the Dougherty County Jail.   Such an event, if it did in fact occur, could only establish that said Defendant delivered him to the jail after Deputy Defendants effected the arrest in question, and could not establish that said Officer played any role whatsoever in the arrest itself.

Accordingly, Officer Defendants' Motions for Summary Judgment (Doc. 102) must be, and is **GRANTED** as to Plaintiff's claims for illegal arrest pursuant to Section 1983 contained within Count II and to Plaintiff's Section 1983 claims for false imprisonment contained within Count IV with respect to Officer Defendants.  (*See also* Docs. 1, 99).

### D.   Counts III, VII:  Section 1983 Claims for Excessive Use of Force and Malicious Prosecution

Plaintiff's Section 1983 claims for excessive use of force and malicious prosecution, contained in Counts III and VII respectively, were asserted against Deputy Defendants only, and not Officer Defendants.  (*See* Docs. 1, 99).  Accordingly, resolution of the same has no bearing on the instant Motion for Summary Judgment. *See supra* n. 1.

### E.   Count V:  First Amendment Claims

Plaintiff alleges two separate First Amendment retaliation claims: 1) that he was arrested in part because he continued to voice his request for Deputy Defendants to stop beating Mr. Mimbs; and 2) that he was arrested in part because he refused to accept Deputy Bruce's alleged attempt to compel him to remain silent concerning the events.   As stated earlier, the facts, when viewed in a light most favorable to Plaintiff, suggest a finding that Officer Defendants never touched, spoke to, or arrested Plaintiff. *See supra* Part V, C.   Furthermore, Plaintiff does not point to any clearly established law that would have alerted Officer Defendants that any conduct

in which said Defendants were engaged violated Plaintiff's First Amendment Rights. Accordingly, any First Amendment retaliation claim, such as might exist, cannot be maintained against these Defendants.   Officer Defendants' Motion for Summary Judgment (Doc. 102) is therefore **GRANTED** as to Plaintiff's First Amendment retaliation claim contained in Count V of his Complaint.

### F.     Count VI:  Georgia law claims for Malicious Prosecution

In Uboh v. Reno, 141 F.3d 1000, 1002 (11th Cir. 1998), a case brought under Section 1983 and Georgia law for malicious prosecution, the Eleventh Circuit established that to be successful, "a plaintiff must prove a violation of his Fourth Amendment right to be free from unreasonable seizures in addition to the elements of the common law tort of malicious prosecution."  "The constituent elements of the common law tort of malicious prosecution included: 1) a criminal prosecution instituted or continued by the present defendant; 2) with malice and without probable cause; 3) that terminated in the plaintiff accused's favor; and 4) caused damage to the plaintiff accused."  *Id*.

Here, Plaintiff has neither claimed nor presented evidence which could support a finding that Officer Defendants instituted or continued any prosecution against Plaintiff.   Therefore, the Court necessarily must find that Plaintiff fails to establish the first element of the common law tort of malicious prosecution as set out in Uboh, thereby failing to meet the Eleventh Circuit standard.   Accordingly, Officer Defendants' Motion for Summary Judgment (Doc. 102) is **GRANTED** as to Plaintiff's Georgia law claims for malicious prosecution contained within Count VI.

### G.     Count VIII: Fifth and Fourteenth Amendment Claims[11]

---

[11]     Upon review of Plaintiff's Complaint, the Court finds that the same did not allege an Equal Protection Claim.  (*See* Doc. 1).  Furthermore, Plaintiff neither alleged nor otherwise referenced such a claim in his first Response to Defendants' First Motion for Summary Judgment.  (*See* Doc. 49).   In its January 26, 2006 Order, the Court, in granting Deputy Defendants' Motion for Clarification, clearly ordered that Plaintiff was not allowed to articulate new theories of recovery; and was permitted to clarify only those claims which were originally asserted in his Complaint. (Doc. 98).  Plaintiff's Equal Protection Claims are therefore stricken from consideration in this

Plaintiff asserts that he was not afforded substantive due process as guaranteed him by the Fifth and Fourteenth Amendment during the events in question due to the conduct of Officer Defendants.[12]  *Id.*   Plaintiff further asserts that Officer Defendants' conduct "was designed to treat motorists and passengers of African-American dissent [sic] in a manner which is disparate and distinct from the treatment received by motorists and passengers of other races," thereby violating his rights to Equal Protection.  *Id.*

A "violation of substantive due process will be found only when the plaintiff can show that the officer had a purpose to cause harm unrelated to the legitimate object of arrest." Vaughan v. Cox, 343 F.3d 1323 (11th Cir. 2003).  Furthermore, "the government official's actions must constitute conduct intended to injure in some way unrelated to governmental interests and shocks the conscious."  *Id.*    Such conduct, while not clearly defined by case law, is characterized in Vaughan as "conduct which would offend even hardened sensibilities."  *Id.* Indeed, "only 'the most egregious official conduct' will be the sort of 'abusive executive action' that can be sufficiently arbitrary for constitutional recognition as a potentially viable substantive due process claim."  Carr v. Tatangelo, 338 F.3d 1259, 1271 (11th Cir. 2003).

Here, Plaintiff presents no evidence that suggests that Officer Defendants' had any purpose to cause harm unrelated to the legitimate performance of their duties.    Indeed, the evidence presented, taken in the light most favorable to Plaintiff, shows that Officer Defendants: 1) stopped the Morrison vehicle in which Plaintiff was a passenger based on at least arguable probable cause; and 2) that one unidentified Officer Defendant delivered Plaintiff to the Jail after

---

case.

[12]     Plaintiff proffers no evidence that he had any dealings with the federal government.  "It is axiomatic that the Fifth Amendment due process clause applies only to the federal government, while the Fourteenth Amendment due process clause applies to the states." *See* Mindler v. Clayton County, Ga., 831 F. Supp. 856, 860 (N.D. Ga. 1993).   Plaintiff makes no claim against the federal government.  Accordingly, summary judgment is appropriate as to Plaintiff's Fifth Amendment claims.  Officer Defendant's Motions for Summary Judgment (Docs. 102) is therefore **GRANTED** as to said claims, to the extent asserted.

Deputy Defendants effected the arrest at issue.[13]  *See supra* Part V, B-C.   Neither showing is adequate to meet the "shocking the conscious" standard necessary to sustain a substantive due process claim against Officer Defendants.   Accordingly, Officer Defendants' Motion for Summary Judgment (Doc. 102) is **GRANTED** as to Plaintiff's Fourteenth Amendment Claims contained in Count VIII of his Complaint.

### H.      Count IX: Conspiracy Claims[14]

Plaintiff alleges that Officer Defendants, along with Deputy Defendants, "entered into a conspiracy to hide and cover-up the aforementioned unwarranted physical attack upon Plaintiff. (Docs. 1, 99).

### 1.      Sections 1983 and 1985(2)

"To establish a civil conspiracy under 42 U.S.C. §§ 1983 or 1985, [Plaintiff] must present evidence that [Defendants] acted in concert and that some overt act was done in furtherance of the conspiracy which resulted in [Plaintiff's] deprivation of a constitutional right." *See* Puglise v. Cobb County, 4 F. Supp. 2d 1172, 1181 (N.D. Ga. 1998) (citing Hinkle v. City of Clarksburg, 81 F.3d 416, 421-23, n. 4 (4th Cir. 1996).   "While [Plaintiff does not need to] produce direct evidence of a meeting of the minds, [he] must come forward with specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective to obstruct [Plaintiff's] access to the courts; mere speculation and conjecture will not suffice." *Id.*

Here, Plaintiff puts forth no evidence which could support a finding that Officer Defendants were involved in a conspiracy, either between themselves or with Deputy Defendants

---

[13]     Plaintiff testified in his deposition that there were more than four (4) officers present.  Therefore, it cannot be reasonably deduced upon that testimony that the officer referenced was one of the named Officer Defendants.  (*See* Doc. 33).

[14]     The Court notes that while Plaintiff asserts only a 42 U.S.C. § 1985 conspiracy claim, he now attempts to pursue such a claim pursuant to 42 U.S.C. §§ 1983, 1986 in addition to Section 1985. (Doc. 99; *see also* Doc. 1).  Accordingly, said claims will be addressed as if they were properly pled.

to violate Plaintiff's constitutional rights.[15]    Assuming *arguendo* that a conversation took place between Plaintiff and Defendant Bruce, whereby Plaintiff rejected an offer to withhold his cooperation in exchange for his release from custody, Plaintiff has put forth no evidence which could support a finding either that Officer Defendants knew of said conversation or that these Defendants had any conspiratorial role or agreement with either Deputy Defendant.   Plaintiff further puts forth no evidence that could support a finding that Officer Defendants initiated the traffic stop in furtherance of this, or any other conspiracy.  Plaintiff, therefore, fails as a matter of law to establish a civil conspiracy under either Section 1983 or 1985(2).

### 2.    Section 1985(3) and Section 1986

Plaintiff also fails to establish a civil conspiracy under 42 U.S.C. § 1985(3).   While Plaintiff contends that the Officer and Deputy Defendants "engaged in a team effort to violate the rights of Plaintiff and [Messrs. Mimbs and Morrison] due, in some measure, to their race as African-Americans," he proffers mere speculation as to what he subjectively believes Deputy Defendants' motives were in using racially-charged terms such as "black ass" in advising him to cease speaking; and further offers no evidence that Officer Defendants shared the requisite race-based animus to sustain a Section 1985(3) conspiracy claim.  Griffin v. Breckinridge, 403 U. S. 88 (1971); *see also* Puglise, 4 F. Supp. 2d at 1182 (citing Slavin v. Curry, 574 F.2d 1256, 1262 (5th Cir.), modified on other grounds, 583 F.2d 779 (5th Cir. 1978), overruled on other grounds

---

[15]    In support of his allegation that Officer Defendants engaged in a conversation with Deputy Defendants which resulted in Deputy Bruce making an agreement with Plaintiff as a condition of Plaintiff's release, Plaintiff cites to a document entitled "Moody Affidavit" (Doc. 106, Exh. 2). The Court notes that the same was not produced during discovery, nor was it produced thereafter with the appropriate leave of Court.   Accordingly, this affidavit, and the statements contained therein, is stricken from the record and is not considered in connection with the instant motion. *See supra* n. 5.   Upon further review of Plaintiff's first Response to Defendants' original Motion, the Court finds that this particular argument now offered in support of Plaintiff's conspiracy claims was not initially put forth in response to Defendants' summary judgment motion.  For this reason, independently of the preceding one, said argument is stricken from the record and is not considered in connection with the instant motion.

*sub nom* <u>Sparks v. Duval County Ranch Co., Inc.</u>, 604 F.2d 976 (5th Cir. 1979)).[16]

Having failed to establish that Officer Defendants themselves participated in a conspiracy, or that, having knowledge of the existence of such a conspiracy and the power to prevent or aid in the prevention of the same, neglected to do so, Plaintiff necessarily fails as a matter of law to establish a Section 1986 claim.  <u>Park v. City of Atlanta</u>, 120 F.3d 1157, 1159-60 (11th Cir. 1997).   Accordingly, Officer Defendants' Motion for Summary Judgment (Doc. 102) is **GRANTED** as to Plaintiff's Conspiracy Claims contained in Count IX of his Complaint.

<u>**CONCLUSION**</u>

For the foregoing reasons, together with those stated in open court, the Court Defendants Joe Messer and Scott Mullen's Motion for Summary Judgment (Doc. 102) is **GRANTED**.   The Clerk is directed to enter judgment in favor of Defendants Joe Messer and Scott Mullen ("Officer Defendants") and against Plaintiff Antoine Moody.

**SO ORDERED**, this ___8th___ day of August, 2006, *Nunc pro tunc*, June 12, 2006.

   ___/s/W. Louis Sands_____
   **W. LOUIS SANDS, CHIEF JUDGE**
   **UNITED STATES DISTRICT COURT**

---

[16]   <u>Bonner v. Prichard</u>, 661 F.2d 1206 (11th Cir. 1981) (holding that the decisions of the Fifth Circuit, as that court existed on September 30, 1981, are binding as precedent in the courts in the Eleventh Circuit).